# UNITED STATES DISTRICT COURT

### for the

Middle District of North Carolina



In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Instagram account _Music_Manic_, stored at 1601 Willow, Menlo Park, CA 94025

)
)
)
)
)
)

Case No. 1:17MJ 8

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with Instagram account of _Music_Manic_ as further described in Attachment A, accounts stored at premises owned, maintained, controlled or operated by Instagram at 1601 Willow Rd, Menlo Park, CA 94025

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2241(c) | Aggravated Sexual Abuse |

The application is based on these facts:
See Attached Affidavit in support of the application for search warrrant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sarah M. Griffiths, Special Agent CID
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/20/2017

_____
*Judge's signature*

City and state: Winston-Salem, North Carolina

Joi Elizabeth Peake/ United States Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF NORTH CAROLINA

IN RE SEARCH OF:           )
                                   )
INFORMATION ASSOCIATED WITH  )
_Music_Manic_,                  )    Case No. 1:17MJ _8___
THAT IS STORED AT PREMISES    )
CONTROLLED BY              )
INSTAGRAM, LLC            )

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Sarah M. Griffiths, a Special Agent with the United States Army Criminal Investigation Division, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant for information associated with _Music_Manic_ (the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, ("Instagram") a social-networking company owned by Facebook, Inc. and headquartered in San Francisco, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Instagram to disclose to the government records and other information in its

possession, including the contents of communications, pertaining to the subscriber or customer associated with the SUBJECT ACCOUNT.

2. I am a Special Agent with the United States Army Criminal Investigation Division Command (USACIDC), and have been since December 2014. I have been employed with the United States Army over four years. I have been trained and accredited through the Criminal Investigation Division Special Agent Course, the Special Victims Unit Investigations Course (SVUIC), Domestic Violence Intervention Techniques (DVIT), Child Abuse and Prevention Investigation Techniques (CAPIT), Crime Scene Investigations Training Program (CSITP), and the Structured Child Interviewing Course. The USACIDC is recognized as a Federal Law Enforcement Agency under 28 Code of Federal Regulation (CFR), Section 60.3(a)(2). As a USACIDC Special Agent, I am authorized to investigate criminal offenses involving violations of the Uniform Code of Military Justice and other applicable federal laws where there is an Army interest. As a criminal investigator, I am authorized under Military Rules of Evidence (MRE) 315 to conduct a search when a search authorization has been granted.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient

2

probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2241(c) have been committed by Mr. David Finch. There is also probable cause to search the SUBJECT ACCOUNT for information described in Attachment A for evidence of these crimes and items to be seized listed in Attachment B.

## Probable Cause

5.  On March 11, 2016, the Fort Bragg CID Office was notified that Mr. David Finch raped and sexually abused his eleven-year-old step daughter, A.M.H. (due to the victim being a juvenile, she will be referred to in this affidavit as A.M.H.), all offenses of which occurred at Mott Lake, Fort Bragg, NC, Middle District of North Carolina.

6.  On March 12, 2016, A.M.H. described how David Finch touched her vagina with his hand and put his fingers and penis inside her vagina. A.M.H. stated she and David Finch went on a camping trip to Mott Lake, Fort Bragg, NC, in the late summer/early fall of 2015 after school had already started. A.M.H. stated she believe the first incident occurred on a Saturday. She stated she and David Finch had laid down for the evening and she was in a sleeping bag and he was under blankets. A.M.H. stated the zipper on her

3

sleeping back was broken and did not zip all the way up. A.M.H. stated David Finch put his hand on her vagina over the clothing and rubbed her vagina. She stated she pushed his hand away to get him to stop. A.M.H. described the next incident as she and David Finch camping at the same campsite on Fort Bragg. A.M.H. stated David Finch put his arm over her belly and began to rub it, then moved his hand down to her vagina and started rubbing it over the clothing. A.M.H. stated she pushed David Finch's hand away several times but he continued to rub her vagina, then put his finger inside her vagina. A.M.H. described feeling a lot of pain in her vaginal area after David Finch put his finger inside of her vagina. A.M.H. stated she pretended to be asleep because her moving David Finch's hand away did not stop him. A.M.H. stated David Finch pulled her pants and underpants down to her thighs and inserted his penis inside her vagina while she was lying on her side and he was behind her. A.M.H. described feeling a lot of pain when David Finch did this and stated no one had ever done anything like that to her before this incident. A.M.H. described feeling a lot of pain the next day and stated it was difficult to walk because of the pain in her vaginal and lower abdominal area.

7. On March 12, 2016, CID interviewed Shanna Finch (spouse of David Finch, mother of A.M.H.), who stated in early October 2015, David Finch was staying with a friend for a few days due to an argument between

4

herself and David Finch. During this time, Shanna Finch and A.M.H., went to dinner together, when A.M.H. disclosed to her that David Finch had touched her inappropriately while they were camping at Mott Lake. Shanna Finch stated she confronted David Finch regarding the allegation and he denied he touched her. She stated A.M.H. had downloaded and viewed pornographic images which were found on her cellular telephone and iPod. Shanna Finch described that she and David Finch had spoken with A.M.H. about sex, around age nine, due to her curiosity. Shanna Finch stated A.M.H.'s demeanor had shifted shortly after arriving at Fort Bragg, NC in 2012. Shanna Finch stated she has caught A.M.H. lying to her on several occasions and taking food and hiding it in her room. Shanna Finch related A.M.H. and David Finch were very close, A.M.H. would wear David Finch's t-shirts, she would always carry a teddy bear around that David Finch had given her and even slept on his side of the bed when David Finch was at basic training. Shanna Finch stated last summer, David Finch had purchased a kayak for the family and David Finch and A.M.H. would go camping together almost every weekend at Mott Lake. Shanna Finch described that A.M.H.'s demeanor towards David Finch changed around August/September 2015, wherein she no longer did things with him, she would not carry around the teddy bear anymore, and she began to distance herself from him.

5

8.    On October 4, 2016, CID interviewed B.M. (friend of A.M.H.), who stated A.M.H. had disclosed to him that she was raped by her step-father prior to law enforcement becoming involved.    B.M. stated A.M.H. informed him that she had been raped by her step-father at Mott Lake and in her residence, while he was intoxicated.

9.    On October 25, 2016, A.M.H. stated she had told another individual about the incident in person, but could not recall if she told that person through a social media site as well.  A.M.H. provided the SUBJECT ACCOUNT information for CID to view her messages.

10.    CID obtained Consent to Search the SUBJECT ACCOUNT for information pertaining to the offense.    CID logged onto the SUBJECT ACCOUNT and conducted a review of the messages which revealed the following conversations:

    a.  The SUBJECT ACCOUNT and "Braxton_major_13"

        i.  The SUBJECT ACCOUNT stated "It's been like this my whole life" and "Bullied, abandoned, raped, and scared" in the same conversation.

    b.  The SUBJECT ACCOUNT and "deadcelestial"

        i.  The SUBJECT ACCOUNT stated that she started cutting (self-mutilation) because of "Bullying, parents, school, getting raped by your step dad u have had for 10 years of

6

your...your...entire...life...No one seems to care about me anymore," "I'm scared of anyone touching me, I'm scared of crowds, I can't do anything I used to love doing," and "I can't camp, swim, wear bikinis"

11. On October 25, 2016, CID met with A.M.H. A.M.H was asked if she could recall any additional details from the first time she spoke to this office, wherein she stated David Finch had placed two of his fingers in her mouth after he was done touching her vaginal region. A.M.H stated the last thing David Finch said to her before she went to sleep during one of the incidents was "Night Kiddo." A.M.H stated she hates being called kiddo now and will correct anyone that calls her that. A.M.H. stated she had told Master Major about the incident in person, but could not recall if she told him through a social media site as well. A.M.H stated she knew that her mother didn't believe her and that David Finch would come over to the house whenever A.M.H wasn't home, which made her feel upset and lonely.

12. On October 31, 2016, SA Griffiths and SA Wicks met with Mrs. Finch in order to obtain Consent to Search the Instagram account belonging to A.M.H. Further, Mrs. Finch stated she was not having sexual intercourse with her husband at the time of the initial disclosure by A.M.H. Mrs. Finch stated they had not had sexual intercourse in several months due to the pregnancy. Mrs. Finch was asked if David Finch had ever digitally

7

penetrated her and placed his fingers inside her mouth. Mrs. Finch confirmed that he had previously digitally penetrated her and placed his fingers inside of her mouth on multiple unknown occasions, when alcohol was involved. Mrs. Finch requested for her daughter and husband to undergo polygraph examination testing in order to determine what the truth was regarding the allegation.

13. On December 19, 2016, CID interviewed Brianna Torres (friend of A.M.H.), who stated that A.M.H. disclosed information to her regarding A.M.H.'s step-father shortly after the incident occurred. Miss Torres stated A.M.H. went camping with David Finch at Mott Lake. A.M.H. pretended she was asleep when David Finch placed his hands down her pants and inserted his fingers into her vagina. A.M.H. attempted to tell her mother about the incident; however, nothing happened. A.M.H. began to physically harm herself in order to deal with the pain from the incident.

14. Although the victim consented to the examination of her phone and SUBJECT ACCOUNT, Instagram is not in a format that can be downloaded directly from a phone and evidence must be preserved by individual "screenshots." Therefore, undersigned requests the SUBJECT ACCOUNT content directly from Instagram LLC to rebut potential claims of fabrication and completeness. In addition, content obtained from victim's phone itself does not reveal location data as to where the content originated

8

and where and to who it was sent. It is the experience of the Special Agent that corroboration of the victim's statements is paramount, especially in this type of investigation. Obtaining content directly from Instagram will provide additional location data beyond that which what has already been viewed and preserved via "screenshots."

15.   From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

16.   Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

17.   Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user

9

made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

18. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

19. Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

20. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and

10

information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

21. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

22. Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

23. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

24. Users on Instagram may also search Instagram for other users or particular types of photos or other content.

25. For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request,

11

type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

26. Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

27. Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

28. Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

29. Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

12

30. Instagram states on their law enforcement webpage that if law enforcement seeks information about an Instagram user who has provided consent for the official to access or obtain the user's account information, the user should be directed to obtain that information on their own from their account.

31. On November 7, 2016, I served Instagram with a preservation request, case number 925470, pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the SUBJECT ACCOUNT.

32. As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be

13

evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

14

33. Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the SUBJECT ACCOUNT, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## Information To Be Searched And Things To Be Seized

34. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## Conclusion

35. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of 18 U.S.C. § 2241(c) may be located in the SUBJECT ACCOUNT described in Attachment A.

36. This Court has jurisdiction to issue the requested warrant to Instagram because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

37. Based on the forgoing, I request that the Court issue the proposed search warrant.

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, there exists

16

reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Sarah M. Griffiths
Special Agent
United States Army
Criminal Investigation Command

SUBSCRIBED and SWORN to before me on January ⬭ 2017

The Honorable Joi Elizabeth Peake
United States Magistrate Judge

17

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram profile with username: _Music_Manic_ that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by Instagram, LLC

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

    a.    All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

    b.    All past and current usernames associated with the account;

    c.    The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

    d.    All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

    e.    All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.  All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g.  All communications or other messages sent or received by the account;

h.  All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

i.  All photographs and images in the user gallery for the account;

j.  All location data associated with the account, including geotags;

k.  All data and information that has been deleted by the user;

l.  A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m.  A list of all users that the account has "unfollowed" or blocked;

n.  All privacy and account settings;

o.  All records of Instagram searches performed by the account, including all past searches saved by the account;

p.  All information about connections between the account and third-party websites and applications; and,

q.  All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2241(c) involving Mr. David Finch since August 1, 2015, including, for each username identified on Attachment A, information pertaining to the following matters:

2

(a) The disclosure of rape and sexual abuse of A.M.H, the livelihood changes associated with the incident, and all communications between "Braxton_major_13" and "deadcelestial" with the SUBJECT ACCOUNT.

(b) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

(c) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(e) The identity of the person(s) who communicated with the user ID about matters relating to rape, sexual abuse, camping, bikinis, swimming, tent, sleeping bag, and alcohol, including records that help reveal their whereabouts.